CUTTING *v.* FLORIDA RY. & NAV. CO., (MALLORY *et al.*, Intervenors.)

*(Circuit Court, W. D. Florida. August, 1890.)*

CARRIERS—DISCRIMINATION IN CHARGES—RECEIVER.
    The receiver of a railroad in Florida, where discrimination in freight rates is a criminal offense, (Act Fla. Jan. 6, 1855, c. 1564,) has no right to make such discrimination. Following *Missouri Pac. Ry. Co.* v. *Texas & P. Ry. Co.*, 31 Fed. Rep. 862.

In Equity. Petition in intervention.
*H. Bisbee*, for intervenors.
*John A. Henderson*, for respondent.

SPEER, J. This case arises on a charge of the petitioners, who own and operate a line of steam-ships between New York and Fernandina, that the respondent, who is the receiver of this court in charge of the property of the Florida Railway & Navigation Company, which is a line of road extending west and south to various parts of Florida, unjustly discriminated in the carriage of freights and passengers over its lines against the petitioners, and in favor of another and rival line of steamships, to-wit, the Clyde Line, between the same ports of New York and Fernandina. The specifications are that the respondent (1) makes through bills of lading at special rates with the Clyde Line, and refuses to make same with petitioners' line, and carries out these contracts to the injury of the petitioners; (2) that respondent charges over his road, on all freights and passengers carried by petitioners' steamers, full local tariff

from Fernandina to the local stations on his line, and on such as are sent or received in like manner by the Clyde Line he prorates in such manner that shippers and passengers pay the railroad less than on similar business via the petitioners' line, to the manifest injury of petitioners; (3) that respondent exacts from petitioners on their business prepayment of freight charges, and does not make the same exactions from the Clyde Line, which places the petitioners at a disadvantage with the business community. The respondent admits the facts to be as charged, but justifies them on the ground that the facilities offered by petitioners were not of that satisfactory character, either in permanency or quality of service, which met the emergencies of his railroad in its active competition with a rival road and rival ocean steam-ships, and that the acts complained of were necessary to be done in order to inaugurate and maintain the efficient service of the line complained against. The acts complained of terminated with the enforcement of the interstate commerce act, and the present hearing is on petition for an order on the receiver to pay over to petitioners the difference in the amounts collected by respondent on freights and passengers, etc., over the charges for like services on business via the Clyde Line, while such rates were in force. The intervention was referred to the master, the Honorable Joseph H. Durkee, to take and state an account between the petitioner and the receiver, the court reserving all questions of law and equity. This master filed his report, which is as follows:

"The petitioner owns and operates a line of steam-ships between the ports of Fernandina and New York, and the intermediate ports of Port Royal and Brunswick, which are engaged in general freight and passenger business. These steamers made connection at Fernandina with the line of railroad now operated by the respondent, and through bills of lading, through passenger tickets, and baggage checks were used interchangeably on these lines. In November, 1886, W. P. Clyde & Co. established a line of steamers from New York to Fernandina and to Jacksonville, and with the respondent, as receiver of the Florida Railway & Navigation Company, made contracts as his connecting line. Thereafter the petitioner complains that the said receiver, through his agents, issued instructions on February 12, 1887, that on and after the 18th of that month full local rates would be demanded upon all freights delivered by petitioner to receiver at Fernandina for points in the interior of Florida, or from such points to Fernandina; and that on the same day the receiver caused freight rate No. 4,551 to be issued, whereby petitioner or shipper was compelled to pay 8 cents per cubic foot to respondent's line of railroad upon cedar from Cedar Keys to New York, leaving but 2 cents per cubic foot for petitioner, the through rate being 10 cents per cubic foot, while prior to that time the division of rates gave to the petitioner 7 cents per cubic foot on log cedar and 5 cents per cubic foot on box cedar, and to the respondent 3 cents per cubic foot on each of the above classes. On the 15th day of February, 1887, the respondent caused freight rate No. 4,567 to be issued, to take effect on the 18th day of the same month, noted "Applicable only to Mallory Line," which, while retaining totals of through rates, gave to the respondent's line of railroad a greater proportion of such rates than had been hitherto charged on through business via Mallory Line. On February 24, 1887, the respondent caused instructions to be given to his agents not to issue any bills of lading in connection with any steam-ships other than the Clyde Line, and steamers running in connection with said railroad to Brunswick and Savannah,

and not to receive from and deliver to any steamer other than Clyde Line, or to carry any freight consigned to petitioner without prepayment of all freight charges. By the operation and effect of these several orders regarding freight rates the petitioner avers that he has been improperly discriminated against to the benefit of the Clyde Line. The respondent states that these orders regarding freight charges did not affect the totals of through rates, but did affect the proportions received by the respective lines. The losses sustained by the Mallory Line by the payment of freight moneys and freight charges in excess of the freight and freight charges collected against the W. P. Clyde Steam-Ship Company for carriage of like freight appear to be as follows: [Then follows a statement of losses aggregating $1,805.32. The eleven items of overcharge in excess of amounts charged via Clyde Line amount to $1,805.32.] In regard to the claim of $105.66 it appears by Exhibit E to have been paid by the Florida Railway & Navigation Company. The claim for uncollected freight bills, amounting to $893.89, represents amounts paid by Mallory Line to the respondent for forwarding freight from Fernandina to destination, advanced charges, and have been collected wholly or in part by petitioner, and cannot be stated by the master. As to the loss sustained by the payment of freight charges on the part of petitioner, which the respondent has not refunded, there is nothing before the master to show amount uncollected.

"Respectfully submitted, JOSEPH H. DURKEE, Master.

"*Jacksonville, Florida, December* 15, 1887."

The law of Florida upon the subject of discrimination in freight rates will be found in the Internal Improvement Act of January 6, 1855, c. 1564. This makes any freight rate "discriminating against the interests of the people a criminal offense, punishable by a fine of five hundred dollars." It is to be observed that the railroad of which the respondent is the receiver was constructed under the provisions of this act, and by means of large gratuities granted to it by the state. The constitution of Florida, (article 16, § 30,) adopted in 1886, authorized the legislature to prohibit discrimination. It is true that the legislature of the state has not carried the latter provision into its statutory enactments, but in the administration of a railroad by a United States court through its receiver it would seem obligatory upon the court to have great deference and consideration for the fundamental law of the state.

It cannot be doubted from the report of the master that a discrimination against the intervenors' line of steam-ships was continuous and injurious, at least to the amount of the master's findings. This was recognized, besides, on two occasions by a distinguished jurist presiding in this court, both Hon. THOMAS SEATTLE, the district judge, presiding, and Hon. DON A. PARDEE, the circuit judge, made orders to forbid the discriminations of the receiver against the intervenors' steam-ship line. The question, indeed, seems to be settled by the decision of Hon. DON A. PARDEE, circuit judge, in the case of *Missouri Pac. Ry. Co.* v. *Texas & P. Ry. Co.*, 30 Fed. Rep. 2. The facts are similar to those found by the master. In that case the Texas & Pacific Railroad Company, like the Florida Railway & Navigation Company, was built by the aids and grants and donations of land from the state. Section 10 of the Texas act provided, like the Florida act, that any discrimina-

750 FEDERAL REPORTER, vol. 43.

tion in regard to charges for freight or passengers, or in any other matter, should not be made by the Texas & Pacific Railroad Company. It is true that the Florida act made discrimination, by its corporate beneficiary, a criminal offense, punishable by a fine of $500; but it is a well-settled principle that a contract prohibited by statute, with a penalty attached, is void. *Harris* v. *Runnels*, 12 How. 79–83. Whether or not this penal statute would have the precise legal effect of the Texas enactment, certain it is that this court could not justifiably condone the continuous violation of a penal statute on the part of its receiver. The decision of Judge PARDEE is therefore in point, and, in our judgment, its clearness, force of reasoning, and weight of authority must control the decision here. "If respondents," says Judge PARDEE, "are, as they seem to say, charging the petitioner's lines less per ton per mile than the charges made on respondents' line to freight shippers, under the same condition as for distance and shipping points, then respondents are discriminating against shippers that are forced to use their lines, which ought not to be permitted under any circumstances, and particularly on a railroad to the construction of which the general government and the state of Texas contributed so large a portion of the public lands." We believe it is true that the general government likewise contributed to the construction of the railroad of which the receiver of this court has charge. "For the relief of petitioners," continues Judge PARDEE, "an order will be entered directing the receivers to give them the same rates and the same privileges for doing business in all respects as are given to other connecting lines, substantially as prayed for in their petition." Extending—legitimately, as we think—the principle of this decision to the facts found by the master, the receiver should be directed to pay to the intervenors the sums found by the master to have been exacted from the intervenors as the result of this unjustifiable discrimination. See, also, *Scofield* v. *Railroad Co.*, decided by the supreme court of Ohio, reported in 3 N. E. Rep. 907; *Messenger* v. *Railroad Co.*, 18 Amer. Rep. 754, New Jersey court of appeals; *McDuffee* v. *Railroad Co.*, 13 Amer. Rep. 72, supreme court of New Hampshire; *Railroad Co.* v. *People*, (Ill.) 8 Amer. Rep. 690; *Hays* v. *Railroad Co.*, 12 Fed. Rep. 309, Judge BAXTER; *Menacho* v. *Ward*, 27 Fed. Rep. 529, (rule of evidence;) *McCoy* v. *Railroad Co.*, 13 Fed. Rep. 3, and note, p. 11; *Railroad Cases*, 110 U. S. 667–682, 4 Sup. Ct. Rep. 185. In the latter case the court declare:

"A railroad company is prohibited, both by the common law and by the constitution of Colorado, from discriminating unreasonably in favor of or against any other company seeking to do business on its road."

A multitude of similar cases might be stated, but, the principle and policy of the law having been embodied into the federal statutes relating to interest of commerce, the citation is perhaps superfluous. For the reasons stated the master's report in this case will stand confirmed, and a decree be drawn directing the receiver to pay to the intervenors, or their solicitor, the sum found in the account taken by the master.