BALTIMORE & O. R. CO. v. HAMBURGER et al. MERCHANTS' & MINERS' TRANSP. CO. v. SAME. PENNSYLVANIA R. CO. v. SAME.

(Circuit Court, E. D. Virginia. August 30, 1907.)

CARRIERS—INTERSTATE TRAFFIC—RATES—SCHEDULES — CONTENTS — NONTRANS-FERABLE PROVISION IN TICKETS — INJUNCTION AGAINST TRANSFER OF TICKETS.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3156], as amended by Act June 29, 1906, 34 Stat. 584, c. 3591, which, after requiring carriers to publish and file schedules showing all of their rates, fares, and charges, provides that "the schedule printed as aforesaid by any such common carrier shall plainly state * * * all privileges or facilities granted or allowed and any rules or regulations which in any wise change affect or determine * * * the value of the service rendered the passenger, shipper or consignee," a provision in a passenger's ticket sold by a railroad company making it nontransferable, where no such limitation is shown in the company's schedule, is unlawful and void, and the company cannot maintain a suit in equity based on such provision to enjoin transfers of such tickets.

155 F.—54

In Equity. On demurrer to bills.

These are three suits in equity, in which bills were filed for the purpose, briefly, of enjoining the defendants, whether acting individually or in concert, or in their own names or that of sundry associates, companies, and combinations, in which it is charged they were severally doing business, from dealing in nontransferable tickets issued by the complainants as public service corporations to and from the Jamestown Exposition, now being held near the city of Norfolk, Va., in due course of business of the said several corporations.

Thomas W. Shelton, for the Baltimore & Ohio and Pennsylvania Railroad Companies.

Hughes & Little for Merchants' & Miners' Transp. Co.

Jeffries & Lawless, for defendants.

WADDILL, District Judge. Upon the presentation of the bills, temporary restraining orders were issued at the instance of said several complainants, and a day fixed for the hearing of the applications for injunctions prayed for, which said restraining orders were made returnable on that day, and continued in force until the further order of the court herein. On the return day the three cases were jointly submitted to the court upon demurrers filed by the defendants which present for the court's consideration certain legal questions affecting the right to maintain the suits, as follows:

(1) The bill does not name the joint or connecting carriers of the plaintiff over whose lines the tickets described in the bill may be used.

(2) Separate and distinct causes against separate and distinct parties are joined in one bill, rendering the same multifarious.

(3) The bill seeks to enjoin a future injury to imaginary nonexisting rights in tickets which have never been issued, and which may never be issued.

(4) Because such action by the court would be legislative, rather than judicial.

(5) Because the bill and the exhibits filed therewith show that the nontransferable provisions of the tickets described in the bill are not contained in the schedules filed with the Interstate Commerce Commission, as required by law, and the same are therefore void, and the said tickets are therefore transferable, and said defendants have the legal right to buy and sell the same.

(6) Because said bill and exhibits show that in the sale of said tickets the provisions of the act of Congress known as "An act to regulate commerce" were violated in the following particulars:

(a) The nontransferable provisions of said tickets do not appear in the schedules filed with the Interstate Commerce Commission.

(b) Said schedules do not show the rates, fares and charges for the transportation of passengers between points on the plaintiff's route or points on the route of its connecting carriers with which the joint rates alleged in the bill have been established; nor do they show the points on the plaintiff's line and the points on the route of its connecting carriers between which passengers will be carried.

(c) Said schedules do not show the names of the carriers which are parties to said joint tariffs.

In the view taken by the court, the first four grounds of demurrer are without merit, leaving for determination the fifth and sixth grounds, and it will only be necessary to pass upon the fifth and paragraph "a" of the sixth assignment; it not being material to pass upon the questions presented by paragraphs "b" and "c" of the sixth assignment. The fifth assignment and paragraph "a" of the sixth present for the consideration of the court the meaning of certain provisions of Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154], and the amendments subsequently made thereto, including that of June 29, 1906, 34 Stat. 584, c. 3591 and may be stated thus: Can a railway company, where its tariff and schedule of rates, published and filed with the Interstate Commerce Commission as required by law, fail to state that the tickets sold by them between given points are nontransferable, add to such tickets this nontransferable feature?

It is virtually a concessuum in this case—at all events, it is manifest from an inspection of the complainants' bills and the schedules filed therewith as exhibits—that as to the rates in question the tariff and schedules as published and filed with the Interstate Commerce Commission do not show the nontransferable feature of the tickets to the Jamestown Exposition, the sale and transfer of which is sought to be enjoined here, except that in the case of the Baltimore & Ohio Railroad Company such nontransferable feature is noted on tickets sold beyond or at points west of the Ohio river. Section 6 of the interstate commerce act, as amended, after providing for the publication and filing by common carriers of their schedules showing all of the rates, fares, and charges for transportation between different points on their routes, and between points on their own routes and those on the routes of other carriers by railroad, or by pipe line, or by water, when the through route and joint rate have been established, among other things provides that:

"The schedule printed as aforesaid by any such common carrier shall plainly state the place between which the property and passengers will be carried, and shall contain the classification of freight in force, and shall also state separately all terminal charges, storage charges, icing charges, and all other charges which the commission may require, all privileges or facilities granted or allowed, and any rules or regulations which in any wise change, affect or determine any part of the aggregate of such aforesaid rates, fares and charges, or the value of the service rendered the passenger, shipper or consignee."

This language is clear and explicit, and its meaning too plain to admit of serious question or doubt as to what was intended by Congress. The published schedule filed with the commission must show "all privileges or facilities granted or allowed." To illustrate: Whether the tickets sold between given points at fixed rates have attached the privilege of stop-over or the right of sale and transfer, as well as "any rules or regulations which in any wise change, affect or determine any part of the aggregate of such aforesaid rates, fares and charges, or the value of the service rendered to the passenger, shipper or consignee." Whatever may be said as to stop-over and such like advan-

tages, the sale and transfer of the ticket is not only a privilege, but a right which directly enters into and affects the value of the ticket; and hence, if either the right is to be denied or the privilege abridged, under the plain language of the act in question, it must be shown in the published tariff and schedule of the company. The requirement in this respect is quite as positive as the one providing for publication of schedules showing such rates and charges, and prohibiting deviation therefrom.

The tickets in question, having been issued, in so far as the nontransferable feature is concerned, not in accordance with the published tariff and schedules of the company, come clearly within the rule of law in that particular governing contracts made in violation of a statute, and as to the nontransferable feature are void; and to the extent that the complainants' causes of action are dependent upon this feature of the ticket the same must fail. Authorities to support this proposition are abundant. A leading case on the subject is that of Miller v. Ammon, 145 U. S. 421, 12 Sup. Ct. 884, 36 L. Ed. 759, wherein Mr. Justice Brewer, speaking for the court, at page 426, of 145 U. S. and page 886 of 12 Sup. Ct., said:

"The general rule of law is that a contract made in violation of a statute is void, and that, when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover. Pollock's Principles of Contracts, pp. 253 to 260; Penn v. Bornman, 102 Ill. 523; Alexander v. O'Donnell, 12 Kan. 608; Gunter v. Leckey, 30 Ala. 591; Kennedy v. Cochrane, 65 Me. 594; Bank of the United States v. Owens, 2 Pet. 527, 539, 7 L. Ed. 508; Pangborn v. Westlake, 36 Iowa, 546, 549; Harris v. Runnels, 12 How. 79, 84, 13 L. Ed. 901. In Bank v. Owens this court said: 'There can be no civil right where there can be no legal remedy; and there can be no legal remedy for that which is itself illegal.'"

The exceptions to the doctrine will be found to be aptly stated in Mr. Justice Brewer's opinion; that is, that the whole statute must be examined to ascertain whether it was intended that a contract made in contravention of it should be avoided—the learned Justice concluding:

"When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void."

The cases of Gulf, etc., R. R. v. Hefley, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910, Wight v. United States, 167 U. S. 512, 518, 17 Sup. Ct. 822, 42 L. Ed. 258, Texas & P. R. R. Co. v. Mugg, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011, Same v. Abilene Cotton Oil Co., 204 U. S. 445, 27 Sup. Ct. 350, 51 L. Ed. 553, and Southern Railway Co. v. Wilcox, 99 Va. 394, 39 S. E. 144, will be found to refer specially to controversies arising over interstate shipments of freight at rates different from the lawful tariff as published and filed with the Interstate Commerce Commission, pursuant to the act of Congress under consideration in this case. In Texas, etc., R. R. v. Abilene Cotton Oil Co., 204 U. S. 445, 27 Sup. Ct. 357, 51 L. Ed. 553, Mr. Justice White said:

"In view of the binding effect of the established rates upon both the carrier and the shipper, as expounded in the two decisions of this court just referred to, the contention now made, if adopted, would necessitate the holding that a cause of action in favor of a shipper arose from the failure of the carrier to make an agreement, when, if the agreement had been made, both

the carrier and the shipper would have been guilty of a criminal offense, and the agreement would have been so absolutely void as to be impossible of enforcement."

In the case of Southern Railway Co. v. Wilcox, 99 Va. 394, 408, 39 S. E. 144, 147, Judge Buchanan, speaking for the Supreme Court of Appeals of Virginia, said:

"The plaintiff's shipments were interstate freight, and must be governed by the interstate commerce act. That statute prohibits an interstate carrier from contracting for or collecting a less rate of freight on interstate shipments than that specified in the schedule of rates in force at the time, and which are required to be printed and kept at all stations for the inspection and use of the public. The evidence, as before stated, tended to show that the alleged contract was in violation of that act. If it was, there could be no recovery upon it; the general rule of law being that a contract made in violation of law is void, and that, when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover. Camp v. Bruce, 96 Va. 521, 31 S. E. 901, 43 L. R. A. 146, 70 Am. St. Rep. 873; Hancock v. Railroad Co., 145 U. S. 416, 12 Sup. Ct. 969, 36 L. Ed. 755; 5 Rob. Pr. 409 et seq. There is no reason why contracts in violation of the interstate commerce act should not be governed by the general rule, and the courts which have passed upon this question have generally so held. (Citing numerous cases.)"

Complainants earnestly insist that, whatever may be the effect of the failure properly to embody in the published schedule of tariff rates the fact of the nontransferability of the tickets, the defendants, the purchasers of such tickets with knowledge of their limitations, cannot avail themselves of the defense interposed by them. The answer to this is that the defendants are not seeking any relief at the hands of the court, and the complainants cannot escape the consequences of weakness in their own case by relying on any disability that may or may not attach to the defendants.

The contention is further made that the act of default on the part of the complainants in publishing and filing the tariff and schedule of rates necessary to impose the nontransferable feature on their tickets, being something not wrong within itself, the defense interposed regarding the tickets has no application, and should not avail the defendants. This position, however, is untenable, as the undertaking to do what the law forbids is void, whether the acts done or undertaken be malum in se or malum prohibitum. See note to Harris v. Runnels, 53 U. S. (12 How. [2d Ed.] Rapalje's Notes No. 2) 79, 13 L. Ed. 901, and cases there cited; also Miller v. Ammon, 145 U. S. 421, 12 Sup. Ct. 884, 36 L. Ed. 759.

It follows, from what has been said, that the injunction prayed for by the Baltimore & Ohio Railroad Company should be denied, except as to tickets issued by it west of the Ohio river; that that of the Pennsylvania Railroad Company should be refused; and the injunction sought by the Merchants' & Miners' Transportation Company granted only in so far as it pertains to the tickets issued over its own water lines, but not to tickets issued upon connecting lines of railway; and the temporary restraining orders heretofore entered, except in the particulars mentioned, will be vacated.