# LLOYD *v.* JOHNSON.

CONTRACTS; OCCUPATION TAX; REAL ESTATE AGENTS.

1. Where the purpose of a statute imposing a license tax on those engaged in certain occupations is to raise revenue, and not to regulate such occupations, and no question of public policy or morals is involved, a contract made by one engaged in one of such occupations without having taken out a license is not void as between himself and the other party to the contract; and it is immaterial that the statute prohibits the carrying on of the occupation in question without a license, and imposes a penalty for so doing.

2. In an action by a real estate broker against his principal to recover an agreed commission on the sale of real estate, it is no defense that the broker was doing business at the time he entered into the contract without having obtained a license in violation of sec. 7, par. 47, of the act of Congress of July 1, 1902 (32 Stat. at L. 622, chap.

Note.—As to validity of contracts by one engaging in business without the license required by law, see exhaustive note in 12 L.R.A. (N.S.) 613.

1352) providing that no persons shall engage in the occupations named, which include that of a real estate broker, without first obtaining a license, and imposing a penalty for so doing. (Mr. Chief Justice Shepard dissenting.)

No. 2911. Submitted March 21, 1916. Decided May 29, 1916.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia in an action by a real estate broker to recover his commission on a sale of real estate.                                        *Affirmed.*

The COURT in the opinion stated the facts as follows:

This suit was brought in the supreme court of the District of Columbia by appellee Johnson, a real estate broker doing business in this District, to recover from defendant Lloyd an agreed commission of 5 per cent on the sale price of certain real estate located in the State of Maryland and sold for defendant through the agency of plaintiff. From a judgment in favor of plaintiff, defendant has appealed.

The sole defense is that plaintiff was doing business without a license, and his contract for a commission, therefore, is void and cannot be enforced. Section 7, 32 Stat. at L. 622, chap. 1352, relating to the general subject of "license taxes," in this District, among other things, provides:

"Sec. 7. That no person shall engage in or carry on any business, trade, profession, or calling in the District of Columbia for which a license tax is imposed by the terms of this section without having first obtained a license so to do.  *  *  *

"Par. 15. That real estate brokers or agents shall pay a license tax of $50 per annum. Every person who sells, or offers for sale, as the agent for others, real estate, wherever located, *  *  *  shall be regarded as a real estate broker or agent.  *  *  *

"Par. 47. That any person violating any of the provisions of this section shall, on conviction thereof in the police court of the District of Columbia, be punished by a fine of not more than

$500 for each offense, and in default of ·payment by imprisonment not exceeding thirty days, in the discretion of the court, except as otherwise provided in this section."

*Mr. F. Snowden Hill,* for the appellant:

1. The plaintiff's cause of action under the license laws of the District of Columbia is void, if he did not have a real estate agent's license of, in, and for the said District during the time that he rendered the alleged services.   U. S. Statutes at Large, 57th Congress, First Session, vol. 32, part 1, page 622; *Miller* v. *Ammon,* 145 U. S. 421; *Youngblood* v. *Birmingham T. Co.* 95 Ala. 526; 1 Wharton on Contracts, Sec. 365; *Fox* v. *Dixon,* 12 N. Y. Supp. 267; *Home Ins. Co.* v. *Augusta,* 50 Ga. 537.

2. It is immaterial whether the act penalized be *malum in se* or *malum prohibitum.*   130 U. S. 411; *Aubert* v. *Maze,* 2 B. & P. (Eng.) 374; *Cannan* v. *Bryce,* 3 B. and Ald. (Eng.) 179; *U. N. Bk. etc.* v. *L. N. A. etc.* 145 Ill. 226; *Columbia, etc.* v. *Halderman,* 7 W. & S. (Pa.) 235.

3. When the statute expressly provides that a violation thereof shall be a misdemeanor, it would seem clear that it was ·the intention of the legislature to make illegal, contracts violating such ·statute.   *Youngblood* v. *Birmingham T. Co.* 95 Ala. 526; *Fox* v. *Dixon,* 12 N. Y. Supp. 267; 1 Whart. Contr. Sec. 365.

4. When the penalty is a mere civil one, the authorities are in conflict, but the majority of them hold to be void a contract in violation of a statute.   *Weinshenker* v. *Epstein,* 176 Ill. App. 104; *Richardson* v. *Brix,* 94 Iowa, 626; *Yount* v. *Denning,* 52 Kan. 629; *Johnson* v. *Hulings,* 103 Pa. 498; *Luce* v. *Cook,* 227 Pa. 224; *Stevenson* v. *Ewing,* 87 Tenn. 46; *Buckley* v. *Humason,* 50 Minn. 195; *Stiewell* v. *Lalby,* 89 Ark. 209; *Best* v. *Bauder,* 29 How. Pr. 489.

5. The cases which decide· otherwise proceed on the rule of construction that in *revenue* cases, unless the contrary is manifest, the contract will be valid, whereas the United States Supreme Court proceeds on the opposite one (*Miller* v. *Ammon,* supra), *i. e.,* "when the statute is silent ˏnd contains nothing

from which the contrary can be properly inferred, a contract in contravention of it is void." The vice of the rule first above mentioned is that it assumes a distinction between *malum in se* and *malum prohibitum* when there is none. 130 U. S. 411. Of course, when a foundation has been laid the structure necessarily follows its lines.

6. If the alleged contract be not void under the license laws of the District of Columbia, yet if the plaintiff practised a fraud upon said laws, and, tainted and shielded by such fraud, rendered the services sued for, the courts of this District should deny to him all right of recovery therefor on the grounds of morality and public policy. 174 U. S. 639, 130 U. S. 396, 412; *U. S. Bank* v. *Owens,* 2 Pet. 536; *Sharp* v. *Teese,* 9 N. J. L. 352; *Oscanyan* v. *Arms Co.* 103 U. S. 261.

*Mr. John H. Zabel,* for the appellee, in his brief cited:

*Amato* v. *Dreyfus,* 34 S. W. 450; *Brett* v. *Marston,* 45 Me. 401; *Brown* v. *Duncan,* 10 Barn. & Cres. 98; *Banks* v. *Mc-Cosker,* 82 Md. 518; *Brown* v. *Maryland,* 12 Wheat. 419; *Cobb* v. *Dunlevie,* 63 W. Va. 398; *Coates* v. *Locust Point Co.* 102 Md. 291; *D. of C.* v. *Wilson,* 44 Wash. Law Rep. 41; *D. C.* v. *Flickling,* 33 App. D. C. 371; *D. C.* v. *Lee,* 35 App. D. C. 341; *Fairley* v. *Mills,* 29 L.R.A. 215; *Fackler* v. *Ford et al.* 24 How. 322; *Ferguson* v. *Norman,* 5 Bingham's New Cases, 76; *Hinckley* v. *Germania Fire Ins.* 140 Mass. 38; *Haacke* v. *Knights of Liberty, etc.* 76 Md. 438; *Hodgden* v. *Temple,* 5 Faunt, 181; *Houston* v. *Boagni,* 1 Mc-Gloin's, La. 164; *Harris* v. *Runnels,* 12 How. 79; *Johnson* v. *Hudson,* 11 East, 180; *Justice* v. *Rowland,* 10 Pa. 623; *Jones* v. *Berry,* 33 N. H. 209; *Lindsey* v. *Rutherford,* 56 Ky. 245; *Lockwood* v. *D. of C.* 24 App. D. C. 569; *Mandelbaum* v. *Gregovich,* 17 Nev. 87; *Miller* v. *Ammon,* 145 U. S. 425; *National Bank* v. *Mathews,* 98 U. S. 621; *Ober* v. *Stephens,* 54 W. Va. 354; *Oneida Bank* v. *Ontario Bank,* 21 N. Y. 490; *Peoples' Bank* v. *Alabama G. S. R. Co.* 65 Miss. 365;

*Prince* v. *Eighth St. Baptist Church Co.* 20 Mo. App. 322;
*Platt* v. *R. R. Co.* 99 U. S. 48; *Pangborn* v. *Westlake,* 36 Iowa,
546; *Ruckman* v. *Bergholz,* 37 N. J. L. 437; *Rahter* v. *Bank
of Lancaster,* 92 Pa. 393; *Ritchie* v. *Smith,* 6 N. G. & S. 474;
*Royall* v. *Virginia,* 116 U. S. 572; *Smythe* v. *Hauson,* 1 Mo.
App. 382; *Smith* v. *Mawhood,* 14 N. W. 463; *Tooker* v. *Duck-
worth,* 107 Mo. App. 231; *U. S.* v. *Hartwell,* 6 Wall. 385;
*United German Bank* v. *Katz,* 57 Md. 128; *U. S. ex rel. Early*
v. *Richards,* 35 App. D. C. 540; *U. S.* v. *Wiggleworth,* 2 Story
U. S. 369; *Walker* v. *Baldwin,* 103 Md. 352; *Ward* v. *Mary-
land,* 12 Wall. 418; *Whetson* v. *Missouri,* 91 U. S. 275;
*Washington Electric Vehicle Transportation Co.* v. *D. C.* 19
App. D. C. 462; *Watkins Land Mortgage Co.* v. *Thetford,* 96
S. W. 72; *Woodward* v. *Stearns,* 10 App. Prac. Rep. (N. S.)
N. Y. 395; Am. & Eng. Enc. of Law, vol. 8, p. 654; Am. & Eng.
Enc. of Law, vol. 29, 811–817; Cooley, Torts, p. 191; Cooley,
Taxation, p. 407; Cyc. vol. 26, 633; Cyc. vol. 9, 478; Greenl.
Ev. vol. 1, secs. 50, 52; U. S. S. at Large, vol. 32, p. 590;
Whart. Contr. pp. 360–364; Walker, Real Estate Agency, p.
395; Whart. Contr. sec. 364.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is not denied that at the time the sale in question was made,
plaintiff was conducting his business of a real estate broker with-
out a license as above required. Hence, the question is squarely
presented whether his contract for a commission, which was con-
cededly earned, can be enforced.

The act in question is part of an act of Congress making ap-
propriations for the District of Columbia, and the provision here
involved comes under the general head of "License Taxes," in
which taxes similar to the one imposed upon real estate brokers
or agents are imposed upon auctioneers, commission merchants,
cattle dealers, ticket brokers, hotel keepers, fortune tellers,
hucksters, peddlers, bill posters, pawn brokers, second-hand
dealers, and upon persons engaged in some fifty other occupa-
tions.

It is undoubtedly a general rule of law that contracts made in violation of statutes are void. As was said in *Bank of United States* v. *Owens,* 2 Pet. 527, 539, 7 L. ed. 508, 511: "There can be no civil right where there can be no legal remedy; and there can be no legal remedy for that which is itself illegal." To this general rule, however, the courts have found exceptions. For the exception, resort must be had to the intent of the legislature, as well as to the subject-matter of the legislation. The test for the application of the exception is pointed out in *Pangborn* v. *Westlake,* 36 Iowa, 546, 549, and approved in *Miller* v. *Ammon,* 145 U. S. 421, 426, 36 L. ed. 759, 762, 12 Sup. Ct. Rep. 884, as follows: "We are, therefore, brought to the true test, which is, that while, as a general rule, a penalty implies a prohibition, yet the courts will always look to the language of the statute, the subject-matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if, from all these, it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold and construe the statute accordingly."

A like limitation has been placed upon the rule in *Harris* v. *Runnels,* 12 How. 79, 84, 13 L. ed. 901, 903, where the court said: "The exemption may be inferred from those rules of interpretation, to which, from the nature of legislation, all of it is liable when subjected to judicial scrutiny. That legislators do not think the rule one of universal obligation, or that, upon grounds of public policy it should always be applied, is very certain. For, in some statutes, it is said in terms that such contracts are void; in others, that they are not so. In one statute, there is no prohibition expressed, and only a penalty; in another, there is prohibition and penalty; in some of which, contracts in violation of them are void or not, according to the subject-matter and object of the statute; and there are other statutes in which there are penalties and prohibitions, in which contracts made in contravention of them will not be void, unless one of the parties to them practises a fraud upon the ignorance of the other. It must be obvious, from such diversities of legis-

lation, that statutes forbidding or enjoining things to be done, with penalties accordingly, should always be fully examined, before courts should refuse to give aid to enforce contracts which are said to be in contravention of them."

Counsel for defendant relies chiefly upon the decision of the Supreme Court in *Miller* v. *Ammon,* supra. There, a liquor dealer in Chicago, without the license required, made a large sale of liquors. The purchaser refused to pay. Suit was brought, and defended, as here, upon the ground that the contract was void. The court, adhering to the general rule as above announced, but recognizing the exceptions, upheld the defense and declared the contract void. There, as here, the statute declared a prohibition and a penalty, but did not expressly declare a contract in contravention of it void. A careful inspection of the opinion discloses the ground upon which the court reached its conclusion. The liquor act is referred to as "one of a particularly local character, affecting solely the internal police of the state." It was not treated as a revenue or taxing statute, but as an exercise of the police power for the regulation of the liquor traffic. The following clearly imports this distinction: "By the ordinance, a sale without a license is prohibited under penalty. There is in its language nothing which indicates an intent to limit its scope to the exaction of a penalty, or to grant that a sale may be lawful as between the parties, though unlawful as against its prohibitions; nor when we consider the subject-matter of the legislation, is there anything to justify a presumed intent on the part of the lawmakers to relieve the wrongdoer from the ordinary consequences of a forbidden act. By common consent the liquor traffic is freighted with peril to the general welfare, and the necessity of careful regulation is universally conceded. Compliance with those regulations by all engaging in the traffic is imperative; and it cannot be presumed, in the absence of express language, that the lawmakers intended that contracts forbidden by the regulations should be as valid as though there were no such regulations, and that disobedience should be attended with no other consequence than the liability to the penalty."

It is clear from the opinion of the court that a distinction is deemed to exist between a case like the present, where only the collection of revenue is involved, and the case there under consideration, where the ordinance was primarily a police regulation, aimed at the control and regulation of the liquor traffic, involving a question of public policy affecting in the highest degree the morals and general welfare of the community. In such a case, in view of the subject-matter and object of the legislation and the nature of the business regulated, the case was clearly not within the exception, and in that respect easily distinguishable from the case at bar. That statutes imposing license taxes, involving no exercise of the police power of the State nor any question of public policy, and which do not expressly prohibit unlicensed persons from making contracts nor declare such contracts void, come within the exception, is well settled by both English and American cases. *Johnson* v. *Hudson,* 11 East, 180, 10 Revised Rep. 465; *Smith* v. *Mawhood,* 14 Mees. & W. 452, 15 L. J. Exch. N. S. 149; *Jones* v. *Berry,* 33 N. H. 209; *Rahter* v. *First Nat. Bank,* 92 Pa. 393; *Mandlebaum* v. *Gregovich,* 17 Nev. 87, 45 Am. Rep. 433, 28 Pac. 121; *Prince* v. *Eighth Street Baptist Church,* 20 Mo. App. 332; *Fairly* v. *Wappoo Mills,* 44 S. C. 227, 29 L.R.A. 215, 22 S. E. 108; 1 Whart. Contr. sec. 364.

In Maryland, contracts made by unlicensed agents under statutes similar to ours have been upheld in many cases. *Banks* v. *McCosker,* 82 Md. 518, 51 Am. St. Rep. 478, 34 Atl. 539; *Coates* v. *Locust Paint Co.* 102 Md. 291, 62 Atl. 625, 5 Ann. Cas. 895; *Walker* v. *Baldwin,* 103 Md. 352, 63 Atl. 362. In the *McCosker Case,* the court, considering a statute imposing a license upon "hawkers and peddlers," and containing both a prohibition and a penalty, said: "When the law declares the *consequence* of its violation, the contract can in no sense be regarded as illegal, unless the law itself either by its manifest intent or in express terms so declares it. The provisions of the Code referred to neither directly nor indirectly refer to any consequences, save the payment of a fine for a violation of the law, and the failure to pay such fine, so that it can only be regarded as a revenue

measure, and does not affect the contract between an unlicensed peddler, and the purchaser of goods from him. It will, however, be found to be a question depending in great part, if not altogether, upon the phraseology of the particular statute under consideration. If the statute seeks only the collection of revenue as ours clearly does, there can be no doubt as to its purpose and meaning, but when, as already stated, it is the design of the lawmaking power to protect the public from fraud in the contract for the promotion of some object of public policy, the contract is then prohibited."

Much is attempted to be made of the fact that the present statute contains both a prohibition and a penalty. This is of little importance, since a statute may expressly prohibit an act or impliedly prohibit it by affixing a penalty. In other words, the penalty implies the prohibition. Where a penalty is attached, the effect is the same whether the prohibition be expressed or implied. *Harris* v. *Runnels,* supra. It is also true that "the distinction between *malum in se* and *malum prohibitum* has long since been exploded." *Gibbs* v. *Consolidated Gas Co.* 130 U. S. 396, 411, 32 L. ed. 979, 985, 9 Sup. Ct. Rep. 553. It, of course, follows that the general rule has universal operation where the statute expressly prohibits the making of contracts in violation of its provisions, or where, as in the *Gibbs Case,* the statute provides that a contract made in contravention of its terms shall be "utterly null and void."

In the present case the statute does not expressly prohibit the making of the contract in question or declare it void. The inhibition here would be equally effective had only the penalty been attached, for the prohibition in such a case must follow by implication. But this is not the true test. The real distinction is to be drawn from the purpose of the statute and the nature of the business affected or regulated. Clearly the purpose of the statute here is to raise revenue, and not to regulate the business of real estate brokerage. That this was the real purpose of the statute is emphasized by reference to the numerous other persons engaged in various other occupations who are taxed in the act through the imposition of a license. Nor is there any

question of public policy, morals, or general welfare here involved.

This being a revenue statute, it is to be strictly construed, and its operation should not be extended by implication. It is neither remedial nor founded upon any principle of public policy. "The fair and obvious meaning of the words is undoubtedly to be given to them, and the intention of the legislature, as expressed, is to be carried into effect; but they are not to be strained to embrace by implication subjects not clearly within the obvious meaning of the terms employed." *Jones* v. *Berry,* 33 N. H. 209, 211.

It is manifest, we think, from both the language of the act, the subject-matter and its pain intent, that the punishment of a person failing to take out a license is intended, and not that a contract, otherwise legal, made by an unlicensed agent in pursuance of a lawful business, shall be rendered void. In other words, the purpose of the statute is to raise revenue for the District of Columbia,—not to make the lawful business of real estate brokerage unlawful, nor to bar real estate agents from making contracts. It was of no concern to plaintiff that defendant was not a licensed real estate agent. The service rendered was not affected by reason of plaintiff's failure to pay his license tax. His violation of the law was a matter exclusively between him and the District of Columbia.

The act places no inhibition on the real estate business in this District. The prohibition goes to the agent, and not to the business. Its language is: "That no person shall engage in or carry on any business  *  *  *  for which a license tax is imposed," etc. Both the prohibition and penalty are directed to the person, and not to the business transacted. *Tooker* v. *Duckworth,* 107 Mo. App. 231, 80 S. W. 963; *Hughes* v. *Snell,* Ann. Cas. 1912D, 374, and note (28 Okla. 828, 34 L.R.A.(N.S.) 1133, 115 Pac. 1105). As was said by the Texas court of appeals in *Amato* v. *Dreyfus,* — Tex. Civ. App. —, 34 S. W. 450, where the court had under consideration the right of an unlicensed real estate agent to collect commissions in the face of a statute similar to ours: "It is plain to us that the primary object of

the statute is to provide revenue, and that it was not its pur-
pose to repress or prohibit the several occupations it under-
takes to license.   The provision is that no person shall pursue
any occupation unless he has such a receipt, which means that
the person is prohibited, not the occupation.   No consideration
of public policy, nor one looking to the regulation of the busi-
ness, enters into the statute in question.   The purpose sought to
be subserved is altogether different.   It could with as much
propriety be asserted that a merchant carrying on business under
the same circumstances would not be allowed to enforce payment
for goods sold, nor a banker for money loaned."

In the light of the present statute, the selling of real estate
by a broker or agent without a license is neither *malum in se* nor
*malum prohibitum*.   The sale is not evil in itself, nor prohibited
by the statute.   No prohibition nor penalty. is imposed upon
the business; but the prohibition is placed only upon the person
conducting it.   The blow is directed against the person to assure
the collection of the license tax.   *Lindsey* v. *Rutherford,* 17 B.
Mon. 246.

We conclude, therefore, that the statute is essentially a rev-
enue measure, designed to raise revenue by imposing license
taxes upon persons engaged in many lawful occupations in this
District.   It is not a police regulation.   No question of public
policy or morals is involved.   The object is to raise revenue by
the imposition of a tax on anyone who desires to engage in the
real estate brokerage business.

The judgment is affirmed, with costs.          *Affirmed.*


Mr. Chief Justice SHEPARD dissenting:

I cannot agree to the conclusion in this case.

The plaintiff engaged in a business without having taken out
the license required by law.   Without this he was prohibited
from doing business as a real estate broker, and became subject,
also, for paying a penalty for doing such business.

The contract which he made for selling the land was clearly
illegal.   Recovery upon such contracts has been denied from an

early date. Lord Holt announced the rule at an early date that "every contract made for or about any matter or thing prohibited and made unlawful by any statute is a void contract." *Bartlett* v. *Vinor,* Carth. 252.

Mr. Justice Brewer declared the same rule in *Miller* v. *Ammon,* 145 U. S. 424–426, 36 L. ed. 761, 762, 12 Sup. Ct. Rep. 884, in the following language: "The general rule of law is that a contract made in violation of a statute is void." It matters not whether the thing is expressly prohibited or impliedly so by fixing a penalty for its violation. No contract ought to be enforced in the courts of a state whose laws have been set at defiance.

The only established exception to the general rule before stated is that where from something in the language of the regulatory statute it did not intend that the contract should be void.

The cases of *Harris* v. *Runnels,* 12 How. 79–84, 13 L. ed. 901–903, and *Pangborn* v. *Westlake,* 36 Iowa, 546, come within this exception. Both cases are clearly distinguishable from this. In them the statute furnished ground for interpretation; in the case under consideration there is positively none.

*Pangborn* v. *Westlake* involved a statute requiring the registration of all maps of survey of town additions under a penalty. The contract was for the sale of a lot in an unrecorded subdivision. The court stated that the unlawful act was the failure to record the plat; that the sale of land was not prohibited. The case is so interpreted in a case in the same court shortly thereafter, in which the general rule was applied on the ground that the statute afforded no room for construction. *Dillon* v. *Allen,* 46 Iowa, 299–302, 26 Am. Rep. 145.

The general rule has been applied in the states generally without regard to whether the license act is for the purpose of revenue only. *Stevenson* v. *Ewing,* 87 Tenn. 46–49, 9 S. W. 230 (license of real estate broker); *Buckley* v. *Humason,* 50 Minn. 195, 16 L.R.A. 423, 36 Am. St. Rep. 637, 52 N. W. 385 (real estate broker's license); *Harding* v. *Hagar,* 60 Me. 340 (ship-broker's license); *Johnson* v. *Hulings,* 103 Pa. 498, 49 Am.

Rep. 131 (real estate broker's license); *DeWit* v. *Lander,* 72 Wis. 120, 39 N. W. 349, and *Smith* v. *Robertson,* 106 Ky. 472, 45 L.R.A. 510, 50 S. W. 852 (license for keeping stallion).

In all of the above cases, and others that could be cited, the sole purpose of the statute was to raise revenue from the license tax, but as stated by the court in *Stevenson* v. *Ewing,* 87 Tenn. 49, 9 S. W. 230, that fact alone is not sufficient; it can be taken into consideration only when there is something in the language of the statute from which it may reasonably be inferred that a contract by an unlicensed person was not intended to be void.

The plaintiff in this case deliberately violated the law in acting as a real estate broker without paying the license fee required of him by the law.

This the statute expressly prohibits him from doing. To permit the enforcement of a contract made under such circumstances would be to encourage others to avoid the payment of the license taxes required of them in order that their business be made lawful. It is a strange anomaly that a contract made in violation of a penal law can be enforced in the courts of the jurisdiction whose laws have been trampled upon and set at defiance.

In my opinion the judgment should be reversed.