**WORKMAN & SAYLES, Plaintiff-Appellee v. REPUBLIC MUTUAL INSURANCE CO., Defendant-Appellant; KIDWELL, Defendant-Appellee.**

Ohio Appeals, Second District, Franklin County.

No. 3636.   Decided November 27, 1943.

W. E. Benoy, Columbus, and Paul P. Somers, Columbus, for Plaintiff-Appellee, Workman & Sayles.

Luther L. Boger, Columbus, for defendant-appellant, The Republic Mutual Insurance Company.

W. Thurman Todd, Mt. Vernon, for defendant-appellee, Charles Kidwell.

## OPINION

By GEIGER, J.

This matter is before this Court on appeal from the judgment entered in the Court of Common Pleas of Franklin County, on the 20th of April, 1943, in favor of the plaintiff-appellee and against The Republic Mutual Insurance Company, defendant-appellant herein. The notice of appeal stated that the same is on questions of law and on questions of law and fact.

A motion was made by the plaintiff-appellee to dismiss the appeal on questions of law and fact, which motion was sustained, the Court retaining the cause for hearing on questions of law only.

Matters which seem to the Court of special importance will be emphasized in bold face type.*

The plaintiffs as their first cause of action allege that they are partners doing business in the village of Danville, and for several years prior to June 28, 1941, were conducting the business of an automobile dealer and repair garage; that on the 16th of September, 1940, The Republic Mutual Insurance Company solicited from plaintiffs insurance coverage against liability imposed by law arising out of their operation incident to the business of an automobile dealer. Plaintiffs purchased insurance against the hazards incident to the business, and defendants delivered an automobile policy, No. A-32994, by the terms of which the company insured plaintiffs against liability for bodily harm, etc., limited to $5000.00.

To this policy there was attached an endorsement designated "Garage liability endorsement". This endorsement provided coverage which may be briefly stated; the policy shall cover the operation of any automobile **owned** by or **in charge of the insured** for the purposes necessary to the conduct of the insured's business classified as automobile sales agency or garage, and the use of such automobile for pleasure; coverage is extended subject to the limitations of the policy to cover injuries at any time sustained by any person not employed by the insured on or about the premises described and caused by the operations **which are necessary to the conduct of the named insured's business.**

The policy provides for payment of compensation based upon the salaries and wages paid to those employed by the insured. The policy is extended to cover customers of the insured while riding in or operating an automobile **owned** by the insured while being used for the purposes described in the policy. Coverage shall not extend to customers with respect to automobiles **which such customers have purchased on an instalment payment plan.** Coverage as set forth in the declaration is described in detail, and includes an agreement to pay all sums which the **insured shall become obligated to pay by reason of the liability imposed by law** sustained by any person other than the named insured, caused by accident and arising out of the **ownership, maintenance,** or use of the described automobile. The company agrees to defend any suit against the insured paying incidental costs and expenses.

The policy **excludes** any obligation of the company for any accident which occurs after the named insured's interest in the automobile **has been transferred** without the written consent of the company.

It is alleged that on the 26th day of June, 1941, plaintiffs bargained for a sale and delivered to the mother of one, Harley Rhodes, an automobile, which they, as automobile dealers and repair agents had repossessed; that on the 26th day of June, 1941 the mother of Harley Rhodes agreed to pay for the automobile in instalments and executed a chattel mortgage to secure deferred payments. The automobile was thereupon delivered to the mother of Harley Rhodes. Harley Rhodes, on the 28th day of June, 1941, while driving the same, collided with an automobile operated by the defendant, Charles Kidwell, about two miles east of the village where plaintiffs had their place of business. Kidwell sustained injuries and brought suit against Harley Rhodes and the plaintiff herein in the Common Pleas Court of Knox County, alleging that the automobile, when delivered to the mother of Harley Rhodes was in poor mechanical condition. It is further alleged that the garage keepers knew when the automobile was delivered that it was unsafe and would endanger the property of others in the lawful use of the highways; that the garage keepers allowed said automobile to be taken out and driven on the highway without inspecting or repairing the same, and that while being driven by the said Harley Rhodes the steering apparatus came apart by reason of its poor mechanical and dangerous condition and state of repair, causing the automobile driven by Rhodes to collide with the automobile of Kidwell; alleging that plaintiff was negligent in allowing Harley Rhodes to drive said automobile in the mechanical condition in which it then was, they knowing the dangerous condition of the automobile.

Kidwell recovered in the action a judgment for $6780.00.

It is alleged that at the time of the collision the title to said automobile had not been transferred to the purchaser as required by §6290-2 et seq., GC, although application for such transfer had been signed by the purchaser.

The insurance company was notified of the accident and of the filing of the suit and began the defense of the action in the Common Pleas Court of Knox County, but later notified plaintiff that it was withdrawing from further defense, and that it would not appeal said judgment; that it would pay no part of the judgment as rendered against plaintiff in the event the same became final. It is alleged that a controversy has

arisen between the parties, that the plaintiff maintains that under the terms of the policy and under the facts stated, there is coverage to the extent of $5000.00 to apply upon the payment of said judgment in the event it became final, but that the insurance company contends that there is no coverage and no obligation upon its part to defend or in any manner protect the interests of the plaintiff, or to pay any part of the judgment returned against plaintiff. It is alleged that the plaintiff is entitled to a decree determining whether the insurance company is under obligation to defend the action or to appeal therefrom and to pay the judgment in the event the same becomes final, to the limits of the policy.

The second cause of action sets out the facts from which it is claimed that the plaintiff was entitled to have the policy reformed to comply with the contract made at the time the policy was issued. The Court below held that under the policy as written and without reformation the same imposed a liability upon the insurance company and did not pass upon the question of reformation.

The prayer of the petition is for an order of the Court declaring that it is the duty of the insurance company to defend the action and to pay the judgment in the event the same becomes final.

Charles Kidwell files an answer reciting substantially the facts alleged in the petition, that he was injured and recovered a judgment in the sum of $6780.00.

The insurance company answers admitting certain matters in reference to the issuing of the policy, the business of the plaintiff as automobile dealer, admits that the plaintiff **sold and delivered** to Mrs. Rhodes a repossessed automobile; that certificate of title covering the automobile then standing in the name of the plaintiff was duly assigned on June 27th and delivered to the purchaser, Martha E. Rhodes, who, on the same date, executed the form of application for certificate of title and delivered the same to the plaintiff for filing, and that the same was thereafter (but after the time of the accident) filed, and a certificate of title duly issued in the name of Martha E. Rhodes; that on June 27, 1941, she agreed to pay to plaintiff $118.00 **in instalments** and gave a chattel mortgage to secure the same. The insurance company admits the accident involving Kidwell on June 28, 1941, and the recovery of the judgment against the plaintiff in Knox County. Certain other admissions are made not necessary to repeat.

The insurance company alleges that it never sold or authorized any one to sell on its behalf insurance against the operations incident to the business of the plaintiff. Much of the answer is in defense of the second cause of action. It is alleged that the policy and its endorsement do not cover failure to inspect the automobile before it was sold to Martha E. Rhodes for the reason, among others, that it was not owned by the plaintiff at the time of the accident, but had been previously purchased by and delivered to Martha E. Rhodes; that the same was not being operated by the plaintiff at the time of the accident, but was being operated by Harley Rhodes, the son of the purchaser and the new owner; that such use was without the permission of the plaintiff, but was with the permission of the operator's mother, Martha; that the accident occurred after the interest of the plaintiff had been transferred to Martha E. Rhodes without the written consent of the insurance company, and at the time of the accident was not being used by Harley Rhodes in connection with the business of the plaintiff, as automobile sales agent or garage operator.

Other provisions of the policy are set forth and the prayer is to the effect that the plaintiff's petition be dismissed.

The issue between the parties is whether or not the insurance company under the provisions of the policy issued to the plaintiff is liable to pay the judgment secured by Kidwell against the plaintiff based upon the fact that the automobile had not been properly repaired by the plaintiff, but that when it was delivered to Mrs. Rhodes it was in such condition due to defect in the steering gear that its operation upon the highway was dangerous, the claim of the defendant insurance company being that at the time of the accident **the automobile was not owned by the insured,** that it was not being operated in the business of the insured and that in other respects it was not covered by the provisions of the policy.

The cause was tried by the court alone and the decision was rendered on the 12th of April, 1943, and filed in the office of the Clerk on April 13, 1943. The Court in his opinion states that the evidence is uncontroverted, that although Mrs. Rhodes signed an application for certificate of title and that the plaintiffs had said application in their possession, that it had not been filed with the Clerk of Courts and no certificate of title had been issued to Mrs. Rhodes at the time of the accident. The Court cites the provision of §6290-4 **GC,** to the

effect that no person acquiring a motor vehicle shall acquire any right, title or claim or interest in said vehicle until he shall have issued to him a certificate of title to said motor. * * * The Court holds that in the light of the section Mrs. Rhodes never acquired the title to said automobile and never became its owner and that the title still remained in the plaintiff and they were the owners at the time of the accident, and being the owners the Court was of the opinion that the "cars" covered in the endorsement clearly bring the liability within the terms of the policy, and that the same covered the operation of any automobile owned by the plaintiff even though the same at the time was being driven for pleasure purposes; that the plaintiff and Rhodes had possession of the automobile in the course of its business as an automobile agency and that Rhodes would not have had possession unless it had been the result of a deal being carried out for the sale of the car by plaintiff's agency. The deal was not complete, title had not passed and therefore the plaintiff is covered by the policy. The Court points to the fact that by a decision of the Court of Appeals for the Fifth District on an appeal from the judgment in Kidwell's favor in Knox County, where the facts were substantially the same as in the instant case, that Court found that inasmuch as no title had been issued Rhodes was not the owner, and that a bailor-bailee relationship existed between Rhodes and the plaintiff. The Court states,

"This finding, in our opinion, bears out our finding here made that plaintiffs were owners of the car at the time of the accident and therefore covered by the policy."

The Court in answer to the supplemental brief of the insurance company that paragraph 26 excludes any liability in that the car at the time of the accident was not owned and used for the purposes stated, says: "in our opinion, this provision of the policy is broadened considerably by the 'Automobile Liability' provision of the endorsement which extends coverage to any automobile owned by the insured even though it might be used for pleasure, and even though its use at the time is not with the express consent of the insured."

The Court concludes that "the first paragraph of the prayer of the petition should be granted and that the insurance

company is bound to defend the action to final judgment and pay the final judgment within the limits of the policy." This decision of the Court was filed with the Clerk on April 13, 1943. A final entry, embodying the decision of April 13th, 1943, was filed in the Court of Common Pleas on April 20, 1943. On April 20th a motion for rehearing and new trial was filed. The plaintiff moved to strike the motion for the reason that it was not filed within three days from the filing of the Court's decision This motion was overruled. Thereupon on April 20th the final entry was filed in the Court of Common Pleas from which notice of appeal was given. This matter brings to our attention the question which has been much discussed in recent decisions as to the time in which a motion for new trial must be filed. The latest pronouncement on this matter by the Supreme Court is found in **In re Estate of Lowry, 140 Oh St 223.** While the question there presented was whether a motion for a new trial filed within three days after the filing of the decision was prematurely filed, the Court definitely concludes that the finding of the Court is the equivalent of a verdict of a jury and is to be governed by all statutes relating to verdicts. While the syllabus uses the word "finding", in the body of the opinion it is held that the "application must be made within three days after the verdict or **decision** is rendered." The Court discusses at length the meaning of the word "decision". The decision of the Court in this case having been filed on April 13, 1943, the three days would begin to run from that date. The final entry was filed on April 20th, and on that date the motion to strike the motion for new trial was filed and overruled.

In view of the statement of the Court in the Lowry case, we must conclude that the motion for new trial was not filed within time. But see revised syllabus, **State, ex rel. Brookes, 142 Oh St 107,** Ohio Bar, Oct. 25, 1942, p. 372. It is possible that the revised syllabus may require a modification of the above conclusion.

A very interesting discussion of this matter is to be found in the case of **Western Reserve Mutual Casualty Co. v Holstein,** in the Bar Association Reports of September 20, 1943, p. 65, wherein this Court held:

"A motion for new trial filed at the time of entry of final judgment in conformity with the opinion of the Court, but

more than three days after the filing of such opinion, was not filed within the time required by **Section 11578**."

The matter is discussed in the 1941 supplement to "The Trial and Appellate Practice in Ohio" by Hornbeck & Adams, page 28. The discussion of this matter in Hornbeck & Adams, p. 29, et seq., is so extended as to preclude further examination. The net result is that the motion for new trial not having been filed within three days after the filing of the opinion of the Court, the matter may not be determined upon the weight of the evidence, but may be determined on matters which do not require the filing of a bill of exceptions. This is so unless the revised syllabus modified the decision in the Lowry case, supra. There are many assignments of errors in this case which do not require a bill of exceptions and we therefore proceed to examine the case in spite of the fact that the motion for new trial was not filed within the time fixed in the case of Estate of Lowry, supra.

In the case of Casualty Co. v̇ Holstein, supra, Judge Barnes presents matters which may ultimately result in some modification by the Supreme Court of the Lowry case.

### ASSIGNMENT OF ERRORS.

For its assignment of errors the defendant, the Republic Mutual Insurance Company, alleges that the Court of Common Pleas erred in twelve particulars, Assignment No. 7 presents the essence of the appellant's claim and the others need not be quoted. Assignment No. 7:

In finding that there was coverage under the policy after the automobile had been delivered to Martha Rhodes, the new purchaser; after appellees had executed the assignment of their certificate to the new purchaser; after the new purchaser had executed the purchaser's certificate of title and had delivered the same back to the appellees for filing, which they did after the date of the accident.

For other errors.

Many of these assignments may be determined without a bill of exceptions. Of course 10 and 11 may not be considered if the motion for new trial was not filed within time.

As before stated, the coverage **excludes** under paragraph 10 liability "for any accident which occurs after the named insured's interest in the automobile has been transferred without the written consent of the company", and the liability of

the insurance company depends upon whether or not at the time of the accident the automobile was owned by the insured, or whether by virtue of the transfer sought to be made to Mrs. Rhodes the policy was not operative because the insured's interest had been transferred.

The principal claim of the appellee is, (1) that at the time of the accident the automobile was **not** owned by the insured by virtue of the sale and transfer sought to be made to Mrs. Rhodes; (2) that the policy covers the operation of any automobile owned by or in charge of the named insured for "purposes necessary to the conduct of the named insured's business classified as automobile sales agency or garage".

**Section 6290-4 GC,** provides in substance that no person acquiring a motor vehicle from the owner thereof shall acquire any right, title, claim or interest in said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle.

"No court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle hereafter sold or disposed of or mortgaged or encumbered unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued in accordance with the provisions of this chapter."

**Frederick, Appellee, v Williams Company, 68 Oh Ap 217,** holds in substance that under §6290-4 GC, there is but one way to prove ownership of an automobile and that is by the production of a certificate of title. This is an interesting case, but too long for detailed comment.

In **Ohio Farmers Insurance Company v Todino, 111 Oh St 274,** it is held that one who purchases from an insurance company a policy covering an automobile which contains a provision that the underwriter shall not be liable "if the insured be not the sole and unconditional owner of the automobile may not recover damages under such policy when neither at the time of procuring the insurance nor at the time the liability was claimed to have arisen had the owner complied with the provision of the act." This case was overruled in the case of **Commercial Credit Co. v Schreyer, 120 Oh St 568.**

We have examined a number of cases in Ohio, considering the effect of the lack of a certificate of title as provided in §6294-4 GC. The cases are too lengthy to comment upon in detail, but they should be carefully considered.

The case of **Ohio Farmers Insurance Co. v Todino, 111 Oh St 274**, has already been commented upon, supra. This case does not present the exact question now before us in that it held that the owner of the automobile could not recover unless he had complied with the provision of the act, whereas in the case at bar the insurance company claims that under the policy there is no liability even though there be a lack of compliance with the provisions of the statute. The Court in its opinion, by Conn, J., states at the bottom of Page 275:

"The issue and the only issue in this case is: What right has plaintiff, in view of the sole and unconditional ownership clause, to recover from defendant for the loss of the car, it appearing that no bill of sale had been issued to plaintiff for the automobile prior to or at the time she claimed to have acquired title to the car."

The next case of interest is that of **Helwig v Warren State Bank, 115 Oh St 182**. The statutes under consideration in these cases were §§6310-4 to 6310-14, inclusive, which were penal sections, repealed, O. L. 114, 815.

In the case of **Commercial Credit Co. v Schreyer, 120 Oh St 568**, in considering these repealed §§6310-3 to 6310-14, the Court holds that they are penal and in dereliction of the common law and should be construed according to their technical meaning, and that any assignment or transfer of motor vehicles (not violative of the uniform sales laws of this state), which is not executed and delivered in compliance with §§6310-3 to 6310-14 GC, but which is accompanied by delivery of possession, is nevertheless a valid contract between the parties thereto.

In that case the above cited case of **Farmers Insurance Company v Todino, 111 Oh St 274**, and **Helwig v Bank, 115 Oh St 182**, are overruled. The opinion is by Marshall, C. J., who says on page 575:

"A careful study of the act shows that it does not declare any **contract** to be unlawful, but that it shall be unlawful to proceed in any except a prescribed way in executing the contract."

And on page 576, it is stated:

"At common law, a motor vehicle can be bought and sold by parol contract. Any statute, therefore, which limits, or prescribes a different form of contract, or a different procedure, is in derogation of common right and of the freedom of contract, and for that reason the statute is subject to the rule of strict construction."

The Judge at page 581 quotes with approval from Harris v Runnels, 53 U. S., 79:

"Where a statute prohibits an act or annexes a penalty to its commission, it is true that the act is made unlawful, but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it."

On page 585:

"But a failure to execute bills of sale concurrently with the making of sales of motor vehicles, or failure to file a bill of sale immediately thereafter, will not **ipso facto** render a transfer void. A sale of a motor vehicle not accompanied by a bill of sale executed in compliance with the act of 1921 (repealed) is not void, but is effective between the parties. If a bill of sale is executed in proper form, though not executed at the time of making the sale, it is nevertheless a valid instrument when executed."

There is a strong dissenting opinion by Day, J., on page 588.

In the case of **State, ex rel. v Taggart, 134 Oh St 374,** it is held that,

"The 'certificate of title law' relating to motor vehicles and embracing §§6290 to 6290-17, inclusive, GC., constitutes an authorized exercise of police power on the part of the General Assembly and does not violate any of the provisions of the state or federal Constitution."

The case does not discuss the effect of the failure to file certificate, but is of interest.

In **Finance Company v Munday, 137 Oh St 504,** there is an

interesting discussion of the statutes now in effect, and Turner, J., delivering the opinion of the Court, at page 522 states:

"Although Usinger's right of property may be defective by reason of his lack of possession of a certificate of title, the evidence clearly establishes that he had the right of possession."

Matthias, J., delivering a concurring opinion, states:

"Usinger, therefore, had purchased the car from one having the right to give him a certificate of title and he, Usinger, had and still has, the right to demand and, if refused, to secure by appropriate court action, a certificate of title for this car."

We believe the effect of these several cases is that even though no certificate of title was finally lodged with the proper official before the accident, that the contract between the owners of the garage and Mrs. Rhodes for the sale of the car was such a transaction, constituting such a possession as fell within the exclusion of the insurance policy under paragraph 10 (b), and that the insured's interest in the automobile had been transferred without the written consent of the company.

Taking this view of the matter, we must hold that the insurance company is not liable for the judgment recovered by Kidwell.

The Court below not having passed upon the issue of reformation, the cause is remanded for a consideration of the issue by the trial court.

Judgment reversed and remanded.

BARNES, P. J., concurs in judgment.
HORNBECK, J., dissents.

BARNES, P. J., concurs in judgment.

While I concur in the judgment of reversal and remand, I am not in entire accord with all propositions discussed.

I have very serious doubts as to the pronouncement that we may not consider the bill of exceptions for the reason that the motion for new trial was not filed within three days following the trial court's announcement of opinion. This pronouncement is grounded on the opinion of the Supreme Court in the case of **In Re: Estate of Lowry, 140 Oh St 223.** Since the opinion in the Lowry case, there appears in Ohio Bar under

date of October 25, 1943, at page 372, a heading marked, "RE-VISED SYLLABUS". The fifth syllabus reads as follows:

" 'Decision is rendered' within the meaning of Section 11578, GC., when there is filed with the Clerk for journalization a finding which determines the issues submitted."

This revised syllabus presents a somewhat changed viewpoint in what we had understood from the decision in In Re: Estate of Lowry; supra. It appears that the Court is now committed to the proposition that the opinion must be filed with the clerk for journalization in order to constitute a decision within the meaning of §11578 GC.

In the instant case we are advised that the Court rendered a written opinion, but nowhere do we find any order of the Court that the same should be journalized.

In the transcript of docket and journal entries, we do find a notation under a specific date that the Court's opinion was filed. We suspect that following the dictation of the opinion by the trial court he returned it with other papers to the clerk's office and that the Clerk, of his own volition, marked the same filed. What really happened in the instant case was that counsel recognized the written opinion as a basis for finding entry and, following a prescribed practice before the Lowry case, prepared and filed a finding entry. The motion for new trial was filed within three days after the filing of the finding entry. Of course, the finding entry was approved by the Court and thereby journalized. The opinion of the trial court was not journalized unless the mere filing by the Clerk could be so considered. If the motion for new trial was not filed within the three days as required by §11578 GC, then we may not consider the bill of exceptions on any disputed fact.

I doubt very much if this question is important since, in my judgment, every material question essential to a finding and judgment is presented through the pleadings, entries, etc.

The issues joined between the parties are rather fully set forth in the opinion and in the interest of brevity I will not make a re-statement of the issues and so will go at once to what seems to me the important question involved. In the original opinion the statement is made that the principal claim of the appellee is "that at the time of the accident the automobile was not owned by the insured by virtue of the sale and transfer sought to be made to Mrs. Rhodes". As I

read the pleadings and briefs, this is not the major question involved.

The principal question presented and the one determinative as to the rights of the respective parties is whether or not the insurance policy in question under its terms, covered liability such as was recovered against the plaintiffs in the action in Knox County.

As the opinion states, the present action is one for declaratory judgment.

A judgment was procured against Workman & Sayles in Knox County. The basis of the judgment was a claim that they sold to Mrs. Rhodes an automobile which was in poor mechanical condition, with knowledge of such fact, and that it was unsafe and would endanger the lives and property of others in the lawful use of the highways over which it might be driven. When Charles Kidwell recovered judgment against Workman & Sayles, not because of negligence in operation but wholly because they had disposed of the car knowing it to be unsafe and liable to cause injuries. The defendant, The Republic Mutual Insurance Company, with whom Workman & Sayles had an insurance policy, have notified the latter that they will not defend the Kidwell action nor will they pay any judgment obtained by Kidwell for the reason that their insurance policy does not cover a liability of this character. The insurance policy is attached to the answer as an exhibit. Many of its provisions are set out in the petition and answer. The briefs of counsel discussed this question at great length. Each have presented their respective views as to a proper construction to be given to the policy. To restate these in this opinion would take much time and space. It can serve no useful purpose to copy from briefs of counsel all they say on that question. Nothing less would adequately and fully meet the issue.

After careful study of the insurance policy in its entirety, together with briefs of counsel as to their respective claims, I have no difficulty in arriving at the conclusion that the insurance policy in question does not cover a liability such as is the basis of the judgment obtained by Mr. Kidwell in Knox County. The plaintiffs, Workman & Sayles, did not procure an insurance policy protecting them against liability on account of the defective workmanship in their garage or knowingly selling an automobile with knowledge that it was in defective condition and liable to cause injury to others using the highways. It seems to me that counsel for plaintiff-appellee

recognizes the limitations in the policy of insurance when, through alternative pleading, it sought to have a reformation of the policy. It is obvious that if the policy under its language created the desired coverage there would be no reason for a reformation. The argument in the brief favoring reformation points out the particular parts of the policy that might be reformed.

On the second question presented I am in full accord with the original opinion. It is a question whether or not there was a transfer of interest in the automobile sought to be sold by the plaintiff to Mrs. Rhodes. I think there should be no question that there was a transfer of interest even though the application for certificate of title had not yet been filed with the Clerk of Courts at the time of the accident. Everything else had been done; the property had been delivered; a cash payment had been made, instalment notes executed, chattel mortgage executed, transfer of certificate made and delivered, new application made out and signed by Mrs. Rhodes, delivered by Mrs. Rhodes to a member of plaintiff's firm to be filed with the County Clerk.

Under this situation, Workman & Sayles had given up all the control or interest in the automobile. Mrs. Rhodes had acquired possession and the right of property in the automobile even though the certificate had not been issued. I say this with full appreciation of provisions of §6290-4 GC. I base my conclusions on the decision of the Supreme Court in the case of **Automobile Finance Company v Munday et, 137 Oh St 504.** I refer particularly to the opinion of Judge Turner commencing at the bottom of Page 521 and extending through the first half of Page 522. The observations made by Judge Turner are directly in point.

I agree that the judgment of the trial court must be reversed and by reason of the fact that the trial court failed to pass on the issue of requested reformation, there must be a remand so that this issue may be determined.

But for the fact that there is some question as to whether or not we may consider the bill of exceptions, I would be committed to the view that as a matter of law the evidence would not be sufficient to authorize a reformation. However, this being a purely factual question and there always being a possibility of additional evidence, I favor a remand.

HORNBECK, J., dissenting.

The statute, §6290-4 GC, controls and determines that, at the time of the collision the purchaser had acquired no title

466

to the automobile, nor can this court correctly hold otherwise, because of the express terms of the statute that no Court shall recognize any title in him.

The statutes, §§6310-3 and 6310-14 GC, effective when **Commercial Credit Company v Schreyer, 120 Oh St 568,** was decided, have been repealed and the sections now effective control the very particulars which the former statutes did not reach and for the reasons set out by Chief Justice Marshall in that opinion.