Manuel Valdez, Appellee, v. Viking Athletic Association, Appellant.

Gen. No. 45,819.

Opinion filed February 11, 1953. Released for publication February 26, 1953.

C. HILDING ANDERSON, and ALFRED F. BECK, both of Chicago, for appellant.

BAKER, McKENZIE & HIGHTOWER, of Chicago, for appellee; ANDREW W. BRAINERD, of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff brought this action against defendant for breach of alleged contracts for his services as a soccer player. The complaint was in three counts. An answer was filed as to each count, and upon a trial with a jury a verdict was returned for the defendant on the first count and for the plaintiff on the third count in the sum of $3,070. The court did not submit the second count to the jury and heard no evidence thereunder but entered judgment for plaintiff for $500 upon said count and the answer. Defendant's motions for a new trial and for judgment notwithstanding the verdict were overruled and judgment entered upon the verdict under Count III, from which judgments under Counts II and III defendant appeals. Plaintiff did not appeal from the verdict under the first count, and it is therefore not involved upon this appeal.

Before trial, plaintiff, under Rule 53 of the Municipal Court, filed a motion and affidavit calling upon defendant to admit certain facts therein listed. Plaintiff thereafter filed a motion for allowance of attorney's fees for failure to admit the facts called for in Rule 53. The court denied the motion for attorney's fees, from which order plaintiff cross-appeals.

Count II alleged that on or about December 20, 1948, plaintiff entered into an oral contract with defendant, which contract stipulated that plaintiff, for the consideration of $500, was to make or enter into a written contract with defendant to perform as a professional soccer player and trainer with defendant's soccer team for the year 1949–1950; that on or about February 4, 1949, plaintiff received a letter from defendant, which set forth the terms of said written contract, a copy of which letter is attached to the complaint as exhibit "A"; that plaintiff, by reporting to the defendant at its place of business in Chicago, Illinois, and being then and since at all times ready, willing and able to perform as professional soccer player and trainer,

378

accepted said offer and did thereby perform his part of the said oral contract; that defendant refused to pay said sum of $500.

The alleged written contract dated February 1, 1949, attached to the complaint as exhibit "A," is signed by defendant and addressed to plaintiff at Mexico City, Mexico, and reads as follows:

"This letter is a contract where both you Mr. Valdez and the Viking Athletic Association Inc. agree to the following terms:

"That the Viking Athletic Association of 5434 N. Ashland Ave. Chicago, Illinois are to pay Mr. Valdez the sum of Sixty (60) dollars per week for the services as a Soccer Player and Trainer for their Soccer Team. This Contract is for one (1) year from the date, when reporting for duty to the First Team Manager of the Viking A. A. Soccer Team of the National League."

The answer as to Count II alleged that plaintiff obtained the letter from defendant concerning employment as a soccer player merely for the purpose of facilitating his entry into the United States, and any purported agreement is void as being contrary to law and public policy. Plaintiff's theory is that Count II alleged an offer to enter into a written contract, and since the written contract was accepted by plaintiff, and he offered to perform his services, the oral offer was thereby accepted and performed, and the defendant became liable.

■■ It is a fundamental rule of contracts that to constitute a contract by offer and acceptance, the acceptance must conform exactly to the offer, and a letter written in reply to an offer, which restates the terms of the offer with some variations, though slight, cannot be regarded as a consummation of the contract. *Snow v. Schulman*, 352 Ill. 63, 71. An acceptance must

conform exactly to the offer. If it contains new conditions, there is no contract. *Brach v. Matteson,* 298 Ill. 387, 392.

 The offer in the instant case was to enter into a written contract for services for the year 1949–1950. The letter, dated February 1, 1949, stated: "This letter is a contract * * * for one year from the date when reporting for duty." This was at variance with the term of employment contained in the offer and therefore could not be considered an acceptance of the offer under the rule of the cases cited.

 The alleged written contract, embodied in the letter referred to, must be read in connection with the oral offer set up in Count II. There is nothing in the letter which compels the plaintiff to report for duty at any specific time. If the offer, as alleged, was for his services for the year 1949–1950, there was nothing under the terms in the letter to prevent plaintiff from reporting for duty the last day or two, or even the last week of the term 1949–1950. It demonstrates the indefiniteness and uncertainty and the lack of mutuality necessary to the validity of such an offer, and it is therefore unenforceable.

The further defense to Count II that the letter was given "merely for the purpose of facilitating his entry into the United States and any purported agreement is void as being contrary to law and public policy," is predicated upon the Federal statute, Title 8, § 141, U. S. C. A., which reads:

"Validity of contracts for labor of aliens made before importation

"All contracts or agreements, express or implied, parol, or special, which may be made by and between any person, company, partnership, or corporation, and any foreigner or foreigners, alien or aliens, to perform labor or service or having reference to the performance

380

of labor or service by any person in the United States, its Territories, or the District of Columbia previous to the migration or importation of the person or persons whose labor or service is contracted for into the United States, shall be utterly void and of no effect. Feb. 26, 1885, c. 164, § 2, 23 Stat. 332.''

This defense is also leveled against the recovery under Count III, and we shall discuss this question in connection with Count III.

Count III alleged that pursuant to the written contract entered into between plaintiff and defendant, plaintiff reported to defendant for duty on April 20, 1949, and at all times was ready, able and willing to perform as soccer player and trainer on defendant's soccer team; that by the written agreement, plaintiff was to be paid $60 per week for such services for one year from the date of reporting; that following April 20, 1949, plaintiff was allowed to play on defendant's soccer team for five weeks and received only a total of $50 as remuneration, and that there is due to plaintiff the sum of $3,070.

The defense to Count III alleged the illegality of the alleged contract, because it was understood by the plaintiff and defendant that it was to be used to circumvent the immigration laws of the United States; and that plaintiff asked for and obtained his release as a player for defendant in order to play with another team.

The evidence in the record discloses that one Louis Leiva represented the plaintiff in his negotiations with defendant for plaintiff's employment. He testified that he received the contract referred to from the defendant and mailed the same to plaintiff in Mexico City. In connection with this contract, plaintiff called defendant's secretary as a witness for cross-examination under section 60 of the Civil Practice Act [Ill. Rev. Stats. 1951, ch. 110, par. 184; Jones Ill. Stats. Ann.

104.060], and the following question and answer appear in the record: "Q. Tell us why you gave him a contract. A. To help him over the border. That is what we gave him a contract for."

Plaintiff contends in answer to defendant's claim of illegality of contract that the letter which is the basis for the contract did not become operative and was not a contract until the plaintiff reported to defendant for duty, the term of employment being one year from the date of reporting for duty; that he did not cross the border and report for duty until after he had obtained his alien registration card from the United States Government on April 15, 1949, and was then admitted at Laredo, Texas.

We cannot agree with plaintiff's position. The Federal Act directs that contracts, express or implied, for the contemplated service in the United States of an alien, when such arrangement or contract is made "previous to the migration or importation of the person or persons whose labor or service is contracted for into the United States, *shall be utterly void and of no effect.*" (Italics ours.) *Tomkins v. Seattle Construction & Dry Dock Co.,* 96 Wash. 511, 165 Pac. 384; *Munden v. McDaniel,* 152 Misc. 472, 274 N. Y. Supp. 278.

██ The evidence by plaintiff's own witness establishes that the alleged written contract for his services was mailed to plaintiff in Mexico City. Plaintiff admits he received it February 4, 1949, before he crossed the border into the United States. Regardless of when he applied for his alien registration card, he received the letter dated February 1, 1949, which reads, "This letter is a contract * * * ," prior to the migration of plaintiff into the United States, in violation of the Federal statute referred to. The fact that his services were not to commence until some later day does not alter the situation.

■■■

■ It is clear to us that the instant contracts fall within the condemnation of the Federal statute and are void. It follows that plaintiff cannot recover upon the contracts. *First Trust & Savings Bank v. Powers,* 393 Ill. 97, 102.

■ Our conclusion necessarily disposes of plaintiff's cross-appeal from the order denying him attorney's fees, and the order is therefore affirmed. The judgments of the Municipal Court under Counts II and III are reversed.

*Affirmed in part and reversed in part.*

LEWE, P. J. and KILEY, J., concur.