OPINION OF THE COURT
Joseph S. Calabretta, J.
This is a case of novel and current interest, since it involves the question of employment of certain aliens and the practical problems it presents, especially in these times of high unemployment in our State and Nation. We have before us the plaintiff, a citizen of Bangladesh, and now a resident alien in the United States, seeking to recover from the defendants for working here, based upon an agreement made by both with the obvious intention of circumventing and disobeying the United States immigration law. The plaintiff claims ignorance of such law, and the defendants contend that the plaintiff did *221 not work, and even if he did, such work contract was illegal, and therefore, he has no right to recover.
The facts as' found by the court relate an oft-repeated story and warrant serious consideration. Plaintiff had met defendant Shamsher Wadud (the principal owner of the Nirvana Restaurant) in August of 1972 in Bangladesh, at which time and place, the defendant offered to employ plaintiff at his restaurant in New York City. The agreement called for plaintiff to serve an apprentice period of about three months without salary, at the end of which time he would receive a waiter’s salary, and eventually, become the manager of the restaurant. It is conceded by both sides that defendant Wadud did make all visa and travel arrangements.
Plaintiff came to this country at the expense of defendant Shamsher Wadud, arriving on September 17, 1972, and thereafter, resided at defendant Wadud’s home for at least two to three months, and slept and ate at the defendant’s restaurant for an additional two months.
During this time and continuing through May of 1974, plaintiff worked as a waiter in the restaurant, and after so working for a few months, made several demands for payment of wages, but all to no avail. The plaintiff had also made frequent inquiries of defendant regarding his resident visa (commonly called a "green card”), which defendant had promised to obtain for him through his attorney. But, defendant persistently stalled him through devious tactics, until finally, the plaintiff managed to obtain his resident visa at his own time and expense.
The court must now come to grips with the crucial issue in this case, and that is, whether or not an alien possessing a visitor’s visa may recover wages under a contract of employment. It is well-settled law that: "Generally, a party to an illegal contract cannot recover damages for its breach. But as in the case of many such simplifications, the exceptions and qualifications to the general rule are numerous and complex.” (Gates v Rivers Constr. Co., 515 P2d 1020, 1021 [Alaska].)
At bar, the dilemma is compounded by conflicting public policies and equitable doctrines. Plaintiff does not come into court with "clean hands” as he clearly violated the immigration laws by working after his arrival until the date he was issued his "green card”; and, although he acted out of a strong desire to emigrate to the United States, he willingly fell in with defendant, thus making him in effect a coconspirator.
*222 This type of conduct poses serious economic problems for our citizenry. "Employment of illegal aliens in times of high unemployment deprives citizens and legally admitted aliens of jobs; acceptance by illegal aliens of jobs on substandard terms as to wages and working conditions can seriously depress wage scales and working conditions of citizens and legally admitted aliens; and employment of illegal aliens under such conditions can diminish the effectiveness of labor unions.” (De Canas v Bica, 424 US 351, 356-357.) Additionally, the court cannot give credence to plaintiff’s claim of ignorance. As stated in Londono v Immigration & Naturalization Serv. (433 F2d 635, 636): "The petitioner was warned in his application for a visitor’s visa that gainful employment in the United States would constitute a violation of visa conditions, and he agreed, in making that application, to abide by all the terms of his admission.”
However, the court finds that it is the defendant who is the main perpetrator, intent on evading and taking advantage of the immigration laws. It appears that the plaintiff was not the first "friend” that the defendant has manipulated into working for his restaurant with grandiose promises but without remuneration, and, unless this court takes action to prevent its continuance, will not be the last.
The cases cited by the defendant in support of his motion to dismiss merely establish that if an alien on a visitor’s visa is employed in this country in violation of the immigration laws, he is subject to deportation. However, aliens do have certain rights under our laws and access to our courts to redress certain wrongs. (See Catalanotto v Palazzolo, 46 Misc 2d 381.)
Prior to 1952, section 141 of title 8 of the United States Code expressly made work contracts entered into "previous to the migration” by undocumented aliens "void and of no effect”. "Apparently, Congress determined that the exclusion of certain aliens from admission to the United States was a more satisfactory sanction than rendering their contracts void and thus unjustifiably enriching employers of such alien laborers.” (Gates v Rivers Constr. Co., supra, p 1023.) It therefore repealed and replaced that section with title 8 (§ 1182, subd [a], par [14]) of the United States Code. This court must agree with the court in Gates that "permitting employers knowingly to employ excludable aliens and then, with impunity, to refuse to pay them for their services” (supra, p 1022) does not safeguard American labor from unwanted competition. Fur *223 thermore, even under the repealed section, , it has been held in New York that an alien could recover for a work contract entered into after entering the United States, since the statute forbade only work contracts entered into "previous to migration”. (Dezsofi v Jacoby, 178 Misc 851.) The present statute may not be construed to prohibit all work contracts entered into by undocumented aliens. In addition, to deny an alien such redress would, in the court’s opinion, violate his right to equal protection under the Fourteenth Amendment of the Constitution.
New York State does not have any effective statutory prohibition against an employer knowingly hiring illegal aliens. The Federal law, which makes it a felony to harbor illegal entrants, does not encompass employment. (See De Canas v Bica, 424 US 351, supra.) Therefore, the only equitable alternative available to this court is to allow the employee to recover based on the theory of unjust enrichment. Defendant was well aware that a party to an illegal contract cannot ask the court to help him carry out his illegal objective, and being quite knowledgeable about the immigration laws, has managed to run his enterprise without fairly compensating his employees.
This court holds that plaintiff’s violation is overshadowed by defendant’s entire course of deceptive conduct and, therefore, plaintiff is entitled to payment under the New York State Labor Law of the minimum wage then in effect for the period from January 1, 1973 to May 13, 1974, amounting to $6,629.60 (the initial 15 weeks constituting the period of plaintiff’s apprenticeship), plus liquidated damages of $1,657.40, equal to 25%, totaling $8,287. In addition, defendant shall play the sum of $1,500 as and for reasonable attorney’s fees.
However, in arriving at any moneys due to the plaintiff, credit must be given to the defendant for (a) the fair and reasonable value for room and board provided by the defendant in the sum of $2,400; (b) the payment of $450; and (c) air fare to New York in the sum of $688.
All motions made during the trial of this action, and upon which the court reserved decision, are decided in accordance with this decision.
Accordingly, judgment shall be entered for the plaintiff in the sum of $6,249, plus interest, costs and disbursements.